DAVID B.A. DEMO (SBN 153997)
ddemo@plawp.com
ANDREW P. COLLIER (SBN 232647)
acollier@plawp.com
PACIFIC LAW PARTNERS, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
Tel: (510) 841-7777
Fax: (510) 841-7776

Attorneys for
GREAT AMERICAN E&S
INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT AMERICAN E&S INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>IRONSHORE SPECIALTY INSURANCE COMPANY, and FEDERAL INSURANCE COMPANY,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF, EQUITABLE CONTRIBUTION, EQUITABLE INDEMNITY, EQUITABLE CONTRIBUTION AND APPORTIONMENT, AND BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Great American E&S Insurance Company ("GAIC") alleges the following:

**PARTIES**

1. GAIC is, and at all relevant times mentioned in this Complaint was, an insurance company organized under the laws of Delaware and headquartered in Ohio, and has its principal place of business in Ohio.

2. Defendant Ironshore Specialty Insurance Company ("Ironshore") is, and at all times mentioned herein was, an insurance company organized under the laws of Arizona and headquartered in Massachusetts, and has its principal place

1  of business in Massachusetts.

2      3. Defendant Federal Insurance Company ("Federal") is, and at all
3  times mentioned herein was, an insurance company organized under the laws of
4  Indiana and headquartered in New Jersey, and has its principal place of business
5  in New Jersey.

## JURISDICTION

7      4. For diversity purposes, plaintiff GAIC is a citizen of Delaware and
8  Ohio, defendant Ironshore is a citizen of Arizona and Massachusetts, and
9  defendant Federal is a citizen of Indiana and New Jersey.

10     5. This court has original jurisdiction under 28 U.S.C. § 1332, because
11 this is a civil action between citizens of different states in which the matter in
12 controversy exceeds, exclusive of costs and interest, seventy-five thousand
13 dollars ($75,000).

## INTRADISTRICT ASSIGNMENT

15     6. A substantial part of the events that gave rise to this action occurred
16 in Los Angeles County.

## GENERAL ALLEGATIONS

18     7. GAIC issued to Wen by Chaz Dean, Inc. ("WEN") primary and
19 excess commercial general liability insurance policies bearing the following
20 policy numbers, each of which was effective during the following dates.

| Primary Policy No. | Excess Policy No. | Policy Period |
|---|---|---|
| PL2387134-00 | XS2387136-00 | 7/31/10-7/31/11 |
| PL2387134-01 | XS2387136-01 | 7/31/11-7/31/12 |
| PL2387134-02 | XS2387136-02 | 7/31/12-7/31/13 |
| PL2387134-03 | XS2387136-03 | 7/31/13-7/31/14 |
| PL3305889-00 | XS3305889-00 | 7/31/14-7/31/15 |

These policies, and each of them, are referred to hereinafter as the "GAIC Policies."

8. Ironshore issued to WEN a primary commercial general liability insurance policy bearing the number 002473100 and an excess commercial general liability insurance policy bearing the number 002473200, each of which had policy periods effective from 7/31/15-7/31/16.  These policies, and each of them, are referred to hereinafter as the "Ironshore Policies."

9. Federal issued to Guthy-Renker Holdings LLC ("Guthy") primary and excess/umbrella commercial general liability insurance policies bearing the following policy numbers, each of which was effective during the following dates.

| Primary Policy No. | Excess Policy No. | Policy Period |
| --- | --- | --- |
| 3533-34-27 PHL | None/NA | 12/2/09-12/2/10 |
| 3533-34-27 PHL | 7972-96-81 | 12/2/10-12/2/11 |
| 3533-34-27 PHL | 7972-96-81 | 12/2/11-12/2/12 |
| 3533-34-27 PHL | 7972-96-81 | 12/2/12-12/2/13 |
| 3533-34-27 PHL | 7972-96-81 | 12/2/13-12/2/14 |
| 3533-34-27 PHL | 7972-96-81 | 12/2/14-12/2/15 |
| 3533-34-27 PHL | 7972-96-81 | 12/2/15-12/2/16 |

These policies, and each of them, are referred to hereinafter as the "Federal Policies."  WEN qualifies as an insured or an additional insured under one or more of the Federal Policies.

10. WEN notified GAIC, Ironshore and Federal of the following actions in which WEN was named as a defendant:

- *Ashline, et al v. Guthy-Renker Partners, Inc. et al.*, Los Angeles Superior Court, Case No.:  BC 680198 ("Ashline");

- *Barakat, et al. v. WEN by Chaz Dean, Inc., et al.,* Los Angeles Superior Court, Case No.:  BC 607925 ("Barakat");

- *Collazo, et al. v. WEN by Chaz Dean, Inc., et al.,* U.S. District Court, C.D. Calif., Case No.:  2:15-cv-01974 ("Collazo");

- *Cruse, et al. v. WEN by Chaz Dean, Inc., et al.,* Los Angeles Superior Court, Case No.: BC 681653 ("*Cruse*");

- *Cummings, et al. v. WEN by Chaz Dean, Inc., et al.,* U.S. District Court, N.D. Ill., Case No.: 1:16-cv-10690 ("*Cummings*");

- *Fisher, et al. v. Guthy-Renker Partners, Inc., et al.,* Los Angeles Superior Court, Case No.: BC 626484 ("*Fisher*");

- *Franze v. Guthy-Renker Canada Corporation, et al.,* Ontario [Canada] Superior Court of Justice, Case No.: 17-71726 ("*Franze*");

- *Harris, et al. v. Guthy-Renker Partners, Inc., et al.,* Los Angeles Superior Court, Case No.: BC 609379 ("*Harris*");

- *McCurdy v. WBCD Hair and Body, LLC/Guthy-Renker, LLC,* Superior Court of the Virgin Islands, Division of St. Croix, Civil No.: 8x-18-cv231/2018 ("*McCurdy*");

- *McMinn v. Chaz Dean, et al.,* Court of Queen's Bench of Alberta [Canada], Court File No.: 1603 09819 ("*McMinn*");

- *Scott, Barbara v. Guthy-Renker, LLC, et al.,* South Carolina, Berkeley County Court of Common Pleas, Case No.: 2017-CP-08-1-57 ("*Scott*"); and

- *Simmons, et al. v. Guthy-Renker, LLC, et al.,* U.S. District Court, S.D.N.Y., Case No.: 1:15-cv-10026 ("*Simmons*").

These above-listed 12 actions, and each of them, are referred to hereinafter as the "Underlying Actions."

11. WEN is the brand name for a line of hair care products designed, marketed and sold as a lather-free alternative to regular hair care products. The line was developed by Chaz Dean. WEN and Guthy-Renker, LLC entered into an agreement regarding the manufacture and distribution of WEN products.

12. The plaintiff/claimants in the Underlying Actions, generally speaking, sought/seek redress for alleged misrepresentations and severe injuries

to their hair and scalp in connection with their purchase and use of WEN cleansing conditioner hair care products in various varieties. Those plaintiff/claimants, generally speaking, asserted/assert various claims against WEN, including allegations of false advertising, products liability, misrepresentation, concealment and negligence, among other claims, on the basis that the WEN products were falsely advertised to be all-natural, but instead contained chemicals that caused hair loss and other injuries.

13. Certain plaintiffs/claimants in the Underlying Actions alleged that they sustained physical injuries to their bodies in connection with their use of WEN products at times when one or more of the Ironshore Policies and one or more of the Federal Policies were in effect.

14. GAIC determined that some of the allegations asserted against WEN in the Underlying Actions were potentially covered by one or more of the GAIC Policies. Accordingly, GAIC agreed to provide a defense to WEN in the Underlying Actions, subject to GAIC's reservation of all of its rights under the GAIC Policies and the law

15. GAIC has incurred substantial legal fees, costs and expenses ("Defense Costs") in connection with its agreement to defend WEN in the Underlying Actions. To date, GAIC has incurred at least the following amounts in such Defense Costs as to the Underlying Actions.

- *Ashline*       $16,879.90
- *Barakat*       $55,995.94
- *Collazo*       $839,952.13
- *Cruse*         $16,383.20
- *Cummings*      $948.15
- *Fisher*        $32,269.92
- *Franze*        $14,399.53
- *Harris*        $233,852.41

- *McCurdy*    $20,961.72
- *McMinn*     $3,562.00
- Simmons      $26,048.00
- *Scott*      $14,272.16

## THE IRONSHORE POLICIES

16. The Ironshore Policies provide potential or actual coverage for some and all of the damages for which WEN has been alleged to be liable in the Underlying Actions.

For example, the Ironshore primary policy (numbered 002473100) contains the following insuring clause:

> **SECTION I – COVERAGES**
>
> **COVERAGE PART I: COMMERCIAL GENERAL LIABILITY AND POLLUTION LIABILITY**
>
> **COVERAGE PART I – Coverage Specific Insuring Agreements and Exclusions**
>
> **Coverage A: General Bodily Injury and Property Damage Liability**
>
> **1. Insuring Agreement**
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies but only if:
>
> **a.** The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the coverage territory; and
>
> **b.** The **bodily injury** or **property damage** takes place during the policy period. . . .

The Ironshore primary policy (numbered 002473100) contains the following definitions:

    **4. Bodily injury** means physical injury, sickness, disease, building-related illness, mental anguish, shock or emotional distress, sustained by any person, including death resulting therefrom. **Bodily injury** shall also include medical monitoring costs. . . .

    **31. Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The Ironshore excess policy (numbered 002473200) follows the form of its "controlling underlying insurance" (that is, the Ironshore primary policy, numbered 002473100), and contains the following language:

**I. COVERAGES**

    **A. INSURING AGREEMENT**

        **1.** We will provide the insured with Excess Liability coverage in accordance with the same terms, conditions, exclusions, limitations and warranties as are contained, as of the inception of this **policy period**, in the **controlling underlying insurance**.

    17.    The allegations asserted against WEN in the Underlying Actions fall within the coverages afforded by one or both of the Ironshore Policies pursuant to these insuring agreements. That is because the Underlying Actions include claims that WEN is/was liable for damages because of "bodily injury" caused by an "occurrence" as those terms are used and operate in the Ironshore Policies.

    18.    The Ironshore primary policy (numbered 002473100) contains the following provisions regarding Ironshore's defense obligations:

**COVERAGE PART I – Common Insuring Agreement**

The following insuring agreements apply to **Coverages A** through **G** inclusive:

    **1.** We will have the right and duty to defend the insured against any

1          suit seeking damages for **bodily injury**, **property damage** or

2          **environmental damage** to which any of **Coverages A** through **G**

3          applies.

4      19.    The provisions contained in the Ironshore primary policy therefore

5 obligate Ironshore to provide WEN with a defense to the Underlying Actions.

6      20.    The provisions contained in both Ironshore Policies also obligate

7 Ironshore to provide indemnity on behalf of WEN in the Underlying Actions.

8 <center>**IRONSHORE'S FAILURE TO PAY**</center>

9      21.    GAIC has requested that Ironshore contribute its fair share towards

10 the defense of WEN in the Underlying Actions. GAIC has also requested that

11 Ironshore contribute its fair share towards indemnification paid in the settlement

12 of the *Harris*, *Fisher*, *Ashline* and *Cruse* lawsuits ("the *Harris*-related Actions").

13      22.    Ironshore has not contributed its fair share towards the defense of

14 WEN in the Underlying Actions. Ironshore has not paid its fair share towards the

15 indemnification of WEN in the *Harris*-related Actions. Ironshore has not

16 reimbursed GAIC in connection with the *Harris*-related Actions as Ironshore

17 agreed pursuant to a written contract executed by Ironshore on January 10, 2020.

18      23.    As a result of Ironshore's failure to contribute appropriately towards

19 the defense of WEN in the Underlying Actions, Ironshore's failure to contribute

20 its fair share towards the indemnification of WEN in the *Harris*-related Actions*,*

21 and Ironshore's breach of its agreement to reimburse GAIC in connection with

22 the *Harris*-related Actions as required by the written contract Ironshore executed

23 on January 10, 2020, GAIC has paid more than its fair share in Defense Costs in

24 the Underlying Actions and for indemnification to settle the *Harris*-related

25 Actions. GAIC is therefore entitled to contribution and reimbursement from

26 Ironshore for those amounts incurred by GAIC which should have been paid by

27 Ironshore.

28 / / /

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

# THE FEDERAL POLICIES

24.     The Federal Policies provide potential or actual coverage for some or all of the damages for which WEN has been alleged to be liable in the Underlying Actions.

For example, the Federal primary policies (numbered 3533-34-27 PHL) for the policy periods of 12/2/14-12/2/15 and 12/2/15-12/2/16 contain the following insuring clause:

> **Coverages**
>
> Bodily Injury and Property Damage Liability Coverage
>
> Subject to all of the terms and conditions of this insurance, we will pay damages that the insured becomes legally obligated to pay by reason of liability:
>
> • imposed by law; or
>
> • assumed in an insured contract;
>
> for **bodily injury** or **property** damage caused by an **occurrence** to which this coverage applies.
>
> This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.
>
> Damages for **bodily injury** include damages claimed by a person or organization for care or loss of services resulting at any time from the **bodily injury**.

These Federal primary policies also contain the following definitions:

> **Bodily injury** means physical:
>
> • injury;
>
> • sickness; or
>
> • disease;

> sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it. . . .
>
> **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. . . .
>
> **Suit** means a civil proceeding in which damages, to which this insurance applies, are sought. **Suit** includes an arbitration or other dispute resolution proceeding in which such damages are sought and to which the insured must submit or does submit with our consent.

The Federal excess/umbrella policies (numbered 7972-96-81) for the 12/2/14-12/2/15 and 12/2/15-12/2/16 policy periods follow the form of the "underlying insurance" (that is, the Federal primary policies numbered 3533-34-27 PHL) for those same terms. Those excess/umbrella policies provide as follows:

> This coverage will follow the terms and conditions of **underlying insurance** described in the Schedule Of Underlying Insurance, unless a term or condition contained in this coverage:
>
> • differs from any term or condition contained in the applicable **underlying insurance**; or
>
> • is not contained in the applicable underlying insurance. . . .
>
> Subject to all of the terms and conditions applicable to Umbrella Coverage B, we will pay, on behalf of the insured, **loss** by reason of liability:
>
> • imposed by law; or
>
> • assumed in an insured contract;
>
> for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

> This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.

The Federal excess/umbrella policies define "loss" to mean "damages that the insured becomes legally obligated to pay because of injury or damage," and their definitions of "bodily injury" and "occurrence" are identical to the definitions quoted above from the Federal primary policies.

25.  The allegations asserted against WEN in the Underlying Actions fall within the coverages afforded by the Federal Policies pursuant to these insuring agreements.  The Underlying Actions include claims that WEN is liable for damages for "bodily injury" caused by an "occurrence" as those terms are used in the Federal Policies

26.  The Federal primary policies (numbered 3533-34-27 PHL) for the policy periods of 12/2/14-12/2/15 and 12/2/15-12/2/16 contain the following provisions regarding Federal's defense obligations.

> Subject to all of the terms and conditions of this insurance, we have the right and duty to defend the insured against a suit, even if such suit is false, fraudulent or groundless.
>
> If such a suit is brought, we will pay reasonable attorney fees and necessary litigation expenses to defend:
>
> • the insured; and
>
> • if applicable, the indemnittee of the insured, provided the obligation to defend, or the cost of the defense of, such indemnittee has been assumed by such insured in an insured contract.

27.  The provisions contained in the Federal primary policies therefore obligate Federal to provide WEN with a defense to the Underlying Actions.

### FEDERAL'S FAILURE TO PAY

28.  As acknowledged by a May 3, 2016, letter from its coverage counsel

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

(Mary McPherson, Tressler LLP), Federal agreed that WEN potentially qualifies as an additional insured under at least one of the Federal Policies as to both defense and indemnity.  That letter further acknowledged that Federal agreed to provide a defense to WEN under one or more of the Federal Policies as to some or all of the Underlying Actions.

29. GAIC has requested that Federal contribute its fair share towards the defense of WEN in the Underlying Actions.

30. Federal has not contributed its fair share towards the defense of WEN in the Underlying Actions.

31. As a result of Federal's failure to contribute appropriately towards the defense of WEN in the Underlying Actions, GAIC has paid more than its fair share in Defense Costs of WEN.  GAIC is therefore entitled to contribution and reimbursement from Federal for those amounts incurred by GAIC which should have been paid by Federal.

## FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF
### (Against Ironshore and Federal)

32. GAIC incorporates by reference as though set forth here again each of the allegations set forth in paragraphs 1-31 above.

33. There presently exists a controversy by and among GAIC, Ironshore and Federal, in that: (a) GAIC contends that one or more of the allegations in the Underlying Actions is covered or potentially covered under one or more of the Ironshore Policies and one or more of the Federal Policies, (b) GAIC therefore contends that Ironshore and Federal had duties under their respective insurance policies to defend WEN in the Underlying Actions, and that Ironshore had duties under its insurance policies to indemnify WEN in the *Harris*-related Actions; (c) GAIC contends that Ironshore has a duty to reimburse GAIC in connection with payments made by GAIC to settle the *Harris*-related Actions pursuant to the written contract Ironshore executed on January 10, 2020, (d) Ironshore and

Federal deny there is the potential for coverage and therefore deny a duty to defend WEN under one or more of their insurance policies in connection with one or more of the Underlying Actions; (e) Ironshore and Federal each deny they have an obligation to contribute to the defense of WEN in one or more of the Underlying Actions; (f) by its conduct, Ironshore denies that it has a duty to reimburse GAIC in connection with the *Harris*-related Actions pursuant to the written contract Ironshore executed on January 10, 2020, and (g) Ironshore and Federal each deny they have an obligation to reimburse GAIC for their fair shares of the Defense Costs that GAIC has paid and will pay in connection with WEN's alleged liability in one or more of the Underlying Actions. A declaration of this court, therefore, is necessary to resolve these controversies.

34.   GAIC seeks a judicial declaration that there is a potential for coverage under one or more of the Ironshore Policies and Federal Policies for one or more of the allegations in the Underlying Actions. GAIC requests that the Court make and enter a binding judicial determination in accordance with GAIC's contentions set forth above. The requested declarations are both necessary and proper at this time in that the interests of judicial economy and substantial justice will be served thereby.

35.   Wherefore GAIC prays for judgment as set forth below.

## SECOND CAUSE OF ACTION FOR EQUITABLE CONTRIBUTION
### (Against Ironshore and Federal)

36.   GAIC incorporates by reference as though set forth here again each of the allegations set forth in paragraphs 1-35 above.

37.   Some or all of the Ironshore Policies and the Federal Policies cover allegations against WEN in the Underlying Actions.

38.   GAIC has paid over $1.3 million towards the defense of WEN in the Underlying Actions. Ironshore has refused to pay for its share of the defense of WEN in the Underlying Actions. Federal has refused to pay for its share of the

defense of WEN in the Underlying Actions.

39. GAIC has been damaged as a legal result of Ironshore's and Federal's failures to pay their fair portion of the cost of defending WEN in the Underlying Actions. GAIC's damages caused by those failures amount to at least 50% of the Defense Costs paid to date.

40. Justice and equity require that any sums paid by GAIC for the defense of WEN in the Underlying Actions which exceed GAIC's share be shifted to Ironshore and Federal.

41. GAIC has paid substantial sums towards the indemnification of WEN for its liability exposure in the Underlying Actions. Ironshore has refused to pay its share of its obligation to indemnify WEN in the *Harris*-related Actions and has failed to reimburse GAIC in connection with payments made by GAIC to settle the *Harris*-related Actions pursuant to the written contract Ironshore executed on January 10, 2020.

42. GAIC has been damaged as a legal result of Ironshore's failure to pay its fair portion of the costs of indemnifying WEN for its liability exposure in the *Harris*-related Actions and Ironshore's failure to reimburse GAIC in connection with the *Harris*-related Actions pursuant to the written contract Ironshore executed on January 10, 2020.

43. Justice and equity require that any sums paid by GAIC for the indemnification of WEN in the *Harris*-related Actions which exceed GAIC's share be shifted to Ironshore.

44. GAIC is therefore entitled to equitable contribution or equitable subrogation from Ironshore and Federal for any and all amounts that have been and may, in good faith, be paid by GAIC for the defense of WEN in the Underlying Actions in excess of GAIC's obligations as alleged herein.

45. GAIC is therefore entitled to equitable contribution or equitable subrogation from Ironshore for any and all amounts that have been and may, in

good faith, be paid by GAIC for indemnification to settle the *Harris*-related Actions in excess of GAIC's obligations as alleged herein

46. Wherefore GAIC prays for relief as set forth below.

## THIRD CAUSE OF ACTION FOR EQUITABLE INDEMNITY

**(Against Ironshore and Federal)**

47. GAIC incorporates by reference as though set forth here again each of the allegations set forth in paragraphs 1-46 above.

48. GAIC has been damaged as a legal result of Ironshore's and Federal's failures to meet their obligations toward WEN under the Ironshore Policies and the Federal Policies.

49. GAIC is therefore entitled to equitable indemnification from Ironshore and Federal of any and all sums paid by GAIC for the defense of WEN in the Underlying Action which exceed GAIC's share as alleged herein.

50. GAIC is also entitled to equitable indemnification from Ironshore for any and all amounts that have been and may be paid by GAIC for indemnification to settle the *Harris*-related Actions in excess of GAIC's share as alleged herein.

51. Wherefore GAIC prays for relief as set forth below.

## FOURTH CAUSE OF ACTION FOR EQUITABLE CONTRIBUTION AND APPORTIONMENT

**(Against Ironshore and Federal)**

52. GAIC incorporates by reference as though set forth here again each of the allegations set forth in paragraphs 1-51 above.

53. GAIC is entitled to contribution from Ironshore and Federal for their respective shares of the costs of defending WEN in the Underlying Actions. GAIC therefore seeks apportionment and recovery of Ironshore's and Federal's equitable shares of the Defense Costs that GAIC has incurred and continues to incur in defending WEN in the Underlying Actions, in an amount to be proven at trial.

54. GAIC also is entitled to contribution from Ironshore for its share of indemnification owed in connection with WEN liability exposure in the *Harris*-related Actions. GAIC therefore seeks apportionment and recovery of Ironshore's equitable share of the sums that GAIC has paid in indemnification to settle the *Harris*-related Actions, in an amount to be proven at trial.

55. Wherefore GAIC prays for relief as set forth below.

## FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT
### (Against Ironshore Only)

56. GAIC incorporates by reference as though set forth here again each of the allegations set forth in paragraphs 1-55 above.

57. Ironshore and GAIC entered into a valid and enforceable written contract (the "Contract") regarding the settlement of the *Harris*-related Actions and indemnification paid by GAIC in those actions.

58. A representative of Ironshore executed the Contract on or about January 10, 2020. A representative of GAIC executed the Contract on or about December 12, 2019.

59. The Contract provides that Ironshore shall pay to GAIC a sum in excess of $200,000.

60. Despite repeated demands from GAIC to Ironshore requesting payment of a sum in excess of $200,000 to GAIC, Ironshore has failed to pay that amount to GAIC as required by the Contract.

61. GAIC has performed the Contract.

62. GAIC has been damaged by Ironshore's failure to pay GAIC the money required by the Contract; among other things, GAIC has not received the benefit of the bargain of the Contract for which it provided substantial consideration.

63. Wherefore GAIC prays for relief as set forth below.

/ / /

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

Case No.:                          16                          COMPLAINT

**PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff GAIC prays for judgment as follows:

**First Cause of Action (as to Ironshore and Federal)**

1. Declaratory judgment, as provided above;

**Second, Third and Fourth Causes of Action (as to Ironshore and Federal)**

2. For economic and consequential damages incurred and being incurred, according to proof;

3. Contribution toward Defense Costs, attorneys' fees and litigation expenses incurred by GAIC in defending WEN in the Underlying Actions, according to proof;

4. As to Ironshore only, contribution toward any indemnification, settlement payments and satisfactions of judgment by GAIC to or on behalf of WEN in connection with WEN's liability exposure in the *Harris*-related Actions, according to proof;

**Fifth Cause of Action (as to Ironshore)**

5. Reimbursement by Ironshore to GAIC toward a sum in excess of $200,000 owed to GAIC pursuant to the Contract;

6. For judgment against Ironshore and in favor of GAIC for a sum in excess of $200,000, plus prejudgment interest thereon;

7. For such other relief as permitted by law resulting from Ironshore's breach of the Contract;

**As To All Causes of Action**

8. For costs of suit incurred in this action, according to proof;

9. For pre-judgment and post-judgment interest as provided by law; and

///
///
///
///

Case No.:  17  COMPLAINT

10. For such other relief as the Court may deem just and proper.

DATED: October 29, 2020        PACIFIC LAW PARTNERS, LLP

/s/ David B.A. Demo
DAVID B.A. DEMO
Attorneys for GREAT AMERICAN E&S INSURANCE COMPANY

**DEMAND FOR JURY TRIAL**

Great American E&S Insurance Company hereby demands a jury trial.

DATED: October 29, 2020        PACIFIC LAW PARTNERS, LLP

/s/ David B.A. Demo
DAVID B.A. DEMO
Attorneys for GREAT AMERICAN E&S INSURANCE COMPANY

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776